**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOLO CUP COMPANY, Respondent.**

**No. 17671.**

United States Court of Appeals, Seventh Circuit.

March 11, 1970.

Reeharing Denied April 6, 1970.

**1150**

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Robert A. Giannasi, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Shayle P. Fox, Lederer, Barnhill & Fox, Chicago, Ill., for respondent.

Before DUFFY, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Solo Cup Company (Solo Cup) and the Calumet Industrial District (District) were found to have violated Section 8(a)(1) of the National Labor Relations Act by denying access of non-employee union organizers to their premises. The National Labor Relations Board (Board) sought enforcement of its order against both companies in this court. The District consented to enforcement of the Board's order,[1] but the Board still seeks enforcement against Solo Cup.

The Calumet Industrial District is an industrial park located in Chicago, Illinois. Solo Cup leases property for one of its plants from the District. There are seven other companies that rent space in the District. The District has its own streets, street signs and sidewalks. The District is bounded by 95th Street on the north, a busy thoroughfare, and the only entrance to the District is Dorchester Avenue which extends from 95th Street through the center of the District and then becomes a dirt road. None of the streets in the District are through streets. Solo Cup is located on the south side of 96th Street to the east of Dorchester Avenue, and its parking lot is located on the north side of 96th Street.

Non-employee union organizers attempted to distribute union literature to employees of Solo Cup during the winter of 1965. In one instance they stood in front of the entrance to the plant on 96th Street and on another day they passed out leaflets in the middle of Dorchester Avenue between 95th and 96th Streets. In both instances, an employee of the District told the organizers that they were trespassing on private property and that if they did not leave, they would be arrested. In 1966, the organizers again attempted to distribute leaflets. They were told by employees of the District that Solo Cup complained that they did not want their employees being solicited in the District. Further, on December 9, 1966, the Treasurer of Solo Cup wrote a letter to the District in which Solo Cup promised to indemnify the District for any expenses incurred in removing trespassers from Solo Cup's property. The Union, United Papermakers and Paperworkers, AFL-CIO, filed a charge with the Regional Director on November 17, 1966, and a complaint was issued on March 15, 1967. The hearing examiner held that while Solo Cup could have prohibited the distribution of union literature on its own premises, it could not interfere with the distribution of literature on the property of the District, and in doing so, the company violated § 8(a)(1). However, to remedy the violation, the examiner ordered the company not to interfere with the distribution of union literature unless such distribution was within the inside portions of the plant building.

The Board agreed with the examiner's result but for different reasons. The Board found that the District was a

1. Judge Kiley and Judge Cummings of this court entered a consent order against Calumet Industrial District on July 24, 1969.

quasi-public place and that the failure to permit the distribution of union literature was discriminatory. Further, the Board concluded that the no-distribution rule violated § 8(a) (1) in light of N.L.R.B. v. Babcock & Wilcox Company, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), since no other reasonable methods of soliciting the employees were available.

The Board's conclusion that Calumet Industrial District is a quasi-public place and that the union organizers were discriminated against is not supported by substantial evidence. While there were no fences surrounding the area and no guards were posted at the entrance to the District, the District was still private property and not open to public use. In Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed. 2d 603 (1968), the Court found that a shopping center which invited the public should be treated as public property. See also Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). Here, the public was not invited into the District. None of the companies located there held itself out as being open to the public, and the general public had no reason to enter the area. The industrial district is not "the functional equivalent of the business district of Chickasaw involved in Marsh," Logan Valley, supra, 391 U.S. at 318, 88 S.Ct. at 1608, nor the shopping center in Logan Valley.

The only other evidence on which the Board relies as to the quasi-public nature of the District is a stipulation entered into by the parties during the hearing. The parties stipulated that mail deliveries, police patrols and catering services were allowed to enter the District. This stipulation was a substitute for the one proposed by the General Counsel which contained "cars selling hot sandwiches, ice cream vendors * *" which counsel for Solo Cup and the District refused to accept. There is no evidence as to the meaning of catering services. In light of the refusal of the General Counsel's proposed stipulation, it is very possible that the term refers simply to companies who supply food pursuant to a contract. To allow admittance of postmen, police and contract caterers does not compromise the private status of the District. There is no other evidence as to the use of the District by members of the public. We conclude that the evidence does not support the Board's findings as to a quasi-public area and, consequently, as to discrimination.

■■ Under the present posture of the case we find that the Board's reliance on N.L.R.B. v. Babcock & Wilcox Company, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), is misplaced. In Babcock & Wilcox the Court in reversing the Board, held that a company could properly exclude non-employee union organizers if the union possessed other reasonable means of reaching the employees. Since Babcock & Wilcox, courts have been reluctant to find no reasonable means of solicitation except on company property and have upheld "a union's right of access * * * only when a substantial number of the employees reside on company property." Broomfield, Preemptive Federal Jurisdiction Over Concerted Trespassory Union Activity, 83 Harv.L.Rev. 552, 553 (1970). To apply the holding of Babcock & Wilcox (see Note 67, Mich.L.Rev. 573 (1969), as to possible extension of Babcock & Wilcox) is unnecessary here because the District has consented to allow union organizers to solicit employees on Dorchester Avenue which is owned by the District. Solo Cup employees are readily identifiable since among the other plants in the Industrial District, only Solo's quitting time is 2:00 p.m. Organizers can effectively solicit employees from Solo Cup on Dorchester Avenue before they can enter 95th Street. Since there is now a reasonable method of solicitation, the necessity of allowing union organizers to solicit employees on the steps of Solo Cup or on their parking lot no longer exists.

While the hearing examiner found that Solo Cup was instrumental in determin-

**1152**

ing the District's policy, we think that nothing would be accomplished by punishing Solo Cup for such action. The purpose of the Board's order is to permit the solicitation of Solo Cup employees and this may now be accomplished without violating Solo's private property rights. We think it is sufficient that Solo Cup be ordered to cease and desist from interfering with the solicitation of its employees on property other than that which it leases from the District and that notices to that effect be posted.

This case is reversed and remanded to the Board to modify the order consistent with this opinion.

Reversed and remanded for modification of order.